*In re* SCHOOL DISTRICT No. 6, PARIS AND WYOMING TOWNSHIPS, KENT COUNTY.

1. CERTIORARI—FINDINGS OF FACT—FRAUD.
 Findings of fact of public debt commission are conclusive, in absence of fraud, on review by Supreme Court by appeal in nature of certiorari (Act No. 273, § 14, Pub. Acts 1925, as added by Act No. 2, Pub. Acts 1937 [Ex. Sess.]).

---

* See Act No. 316, Pub. Acts 1923.—REPORTER.

2. MUNICIPAL CORPORATIONS—BONDS—PUBLIC DEBT COMMISSION.

The powers and duties of the public debt commission in relation to the issuance of bonds by municipalities is supervisory rather than ministerial (Act No. 273, Pub. Acts 1925, as amended by Act No. 2, Pub. Acts 1937 [Ex. Sess.]).

3. STATUTES—CONSTRUCTION—LEGISLATIVE INTENT.

In determining the meaning of a statute it is the primary duty of the court to ascertain, if possible, the intention of the legislature in passing it, which intention is to be drawn from the language of the act itself, the subject-matter under consideration, the scope and purpose of the act, and other acts which may have preceded it or which relate to the same subject.

4. SAME—CONSTRUCTION.

A statute should be so construed that all of its provisions may . be rendered harmonious and, to do so, recourse may be had to the history of the legislation upon the subject-matter of the act.

5. MUNICIPAL CORPORATIONS—REGULATION OF ISSUANCE OF BONDS— STATUTES.

It is presumed that in enacting a statute providing for regulating the issuance of municipal bonds by the public debt commission, the legislature had a definite purpose (Act No. 273, Pub. Acts 1925, as amended by Act No. 2, Pub. Acts 1937 [Ex. Sess.]).

6. STATUTES—DEFINITION AND CONSTRUCTION OF REMEDIAL STATUTES.

A remedial statute is designed to correct an existing law, redress an existing grievance or introduce regulations conducive to the public good and must be liberally construed.

7. MUNICIPAL CORPORATIONS—REGULATION OF ISSUANCE OF BONDS— STATUTES.

Statute regulating issuance of bonds by municipalities is a remedial statute and one to be liberally construed (Act No. 273, Pub. Acts 1925, as amended by Act No. 2, Pub. Acts 1937 [Ex. Sess.]).

8. SCHOOLS AND SCHOOL DISTRICTS—BONDS—PUBLIC DEBT COMMISSION—STATUTES—BUILDINGS—OPERATING EXPENSES.

The public debt commission cannot issue its certificate authorizing a school district to issue bonds for school building and carry out legislative intent of statute regulating issue of such bonds, providing for method of payment thereof, and prescribe duties of various municipal and State officials in connection there-

with unless the commission is reasonably certain the amount of revenue to be received under taxes the school district could lawfully obligate itself to levy would be sufficient to cover payments of principal and interest as they matured without requiring a reduction of tax rate for operating expense (Const. 1908, art. 10, § 21; Act No. 273, §§ 5, 9, Pub. Acts 1925, as amended by Act No. 2, Pub. Acts 1937 [Ex. Sess.]; 2 Comp. Laws 1929, § 7432, subd. [8]; Act No. 62, Pub. Acts 1933, as amended by Act No. 30, Pub. Acts 1934 [1st Ex. Sess.]; Act No. 236, Pub. Acts 1933, as amended by Act No. 249, Pub. Acts 1937).

9. SAME—EDUCATION A MATTER OF STATE CONCERN.

Education in Michigan is a matter of State concern and no part of the local self-government of a particular township or municipality except so far as the legislature may have delegated powers to such local municipalities over the operation of public schools and the means of education and it has never been the legislative policy to provide that schools should be suspended and educational facilities denied in order that monumental school buildings might be erected and paid for.

10. SAME—BONDS—TAXATION—DISCRETION OF ALLOCATION BOARD.

Official of school district, proposing to issue bonds, who is charged with determining or levying taxes, who must include in the amount of taxes levied each year an amount sufficient to pay maturing interest and principal payments could not satisfy his official obligations and perform his duty under the law by merely hoping or trusting to the reasonable discretion of the tax allocation board for the school district's *pro rata* share of the excess over and above the statutory four-mill minimum required to be allocated to the school district (Act No. 273, § 5, Pub. Acts 1925, as amended by Act No. 2, Pub. Acts 1937 [Ex. Sess.]; Act No. 62, §§ 5, 11, Pub. Acts 1933, as amended by Act No. 30, Pub. Acts 1934 [1st Ex. Sess.]).

11. SAME—BONDS—PUBLIC DEBT COMMISSION.

The public debt commission is under duty of passing on the taxing situation in a school district as of the time the matter of issuing bonds is presented to it for consideration and cannot take into consideration conditions over which it has no control and which rest upon the discretion, not yet exercised, of voters of the school district desiring to issue the bonds (Act No. 273, Pub. Acts 1925, as amended by Act No. 2, Pub. Acts 1937 [Ex. Sess.]).

12. Same—Operating Expenses—Buildings—Allocation of Taxes —Bonds—Public Debt Commission.

Under statute providing that school district, to obtain State aid for operating expenses in addition to primary school fund moneys, should levy annually at least 2¾ mills itself, proposed bond issue for building purposes which would raise tax rate to more than 4-mill minimum rate guaranteed by tax allocation statute to school districts, could not be approved by public debt commission where voters of school district had not authorized increase of tax rate as it was uncertain that district could obligate itself to levy more than minimum rate or enough to satisfy needs for operating expenses, other obligations, and the additional burden (Const. 1908, art. 10, § 21; Act No. 273, §§ 5, 9, Pub. Acts 1925, as amended by Act No. 2, Pub. Acts 1937 [Ex. Sess.]; 2 Comp. Laws 1929, § 7432; Act No. 62, §§ 5, 11 [e, f], Pub. Acts 1933, as amended by Act No. 30, Pub. Acts 1934 [1st Ex. Sess.]; Act No. 236, § 32, Pub. Acts 1933, as amended by Act No. 249, Pub. Acts 1937).

13. Same—Bond Issue for Buildings—Tax Limits.

On review of public debt commission's denial of certificate to school district authorizing it to issue bonds for school building, in ascertaining whether bond issue complied with pertinent statutory provisions, the action of voters in voting to issue bonds in question *held*, not to constitute a pledge on its part to raise the tax limit in accordance with provisions of the Constitution (Const. 1908, art. 10, § 21; Act No. 273, §§ 5, 9, Pub. Acts 1925, as amended by Act No. 2, Pub. Acts 1937 [Ex. Sess.]; 2 Comp. Laws 1929, § 7432; Act No. 62, §§ 5, 11 [e, f], Pub. Acts 1933, as amended by Act No. 30, Pub. Acts 1934 [1st Ex. Sess.]).

14. Same — Public Debt Commission — Certificates — Bonds — Buildings—Impairment of Operation—Taxing Ability.

Certificate of public debt commission that proposed bond issue of a school district for a school building complied with statutory provisions regulating payments of principal and interest thereon *held*, properly refused where issue might prevent levy of a tax sufficient to qualify district for State aid for operating expenses and taxing ability of district might be impaired by reduction of assessed valuation or reduction of minimum allocation and voters thus far failed to raise the legal limits of taxation (Const. 1908, art. 10, § 21; Act No. 273, §§ 5, 9, Pub. Acts 1925, as amended by Act No. 2, Pub.

Acts 1937 [Ex. Sess.]; 2 Comp. Laws 1929, § 7432; Act No. 62, §§ 5, 11 [e, f], Pub. Acts 1933, as amended by Act No. 30, Pub. Acts 1934 [1st Ex. Sess.]).

15. CERTIORARI—COSTS—PUBLIC QUESTION.
No costs are allowed in controversy between a school district and the public debt commission relative to issuance of certificate of · approval of bond issue, a public question being involved (Act No. 273, Pub. Acts 1925, as amended by Act No. 2, Pub. Acts 1937 [Ex. Sess.]).

Appeal from Public Debt Commission. Submitted February 24, 1938. (Docket No. 144, Calendar No. 39,937.) Decided April 4, 1938. Rehearing denied June 14, 1938.

Application by School District No. 6, Paris and Wyoming Townships, Kent County, Michigan, for a certificate showing compliance with Act No. 273, Pub. Acts 1925, as amended. Plaintiff reviews order denying such certificate by appeal in the nature of certiorari. Affirmed.

*Warner, Norcross & Judd* and *Miller, Canfield, Paddock & Stone* (*Berry & Stevens,* of counsel), for plaintiff.

*Raymond W. Starr,* Attorney General, *Edmund E. Shepherd* and *Arthur E. Kidder,* Assistants Attorney General, for Public Debt Commission.

POTTER, J. Certiorari by plaintiff to review an order of the Michigan public debt commission of January 19, 1938, denying approval of a bond issue of school building bonds of $150,000 voted by the electors of plaintiff, to be dated March 1, 1937, payable $5,000 annually from 1938 to 1967, with interest at not to exceed five per cent. per annum.

September 10, 1937, application was made by plaintiff for a certificate showing compliance with

Act No. 273, Pub. Acts 1925 (1 Comp. Laws 1929, § 2690 *et seq.*), as amended. The public debt commission denied plaintiff's application and refused to issue its certificate. January 11, 1938, the school district requested a hearing before the commission. This was held January 19, 1938, when plaintiff's application was reconsidered and again denied by written order of the public debt commission containing findings of fact and conclusions of law. There being no claim of fraud, the findings of fact are conclusive. Act No. 2, § 14, Pub. Acts 1937 (Ex. Sess.) (Comp. Laws Supp. 1937, § 2702b). It is sought to review the conclusions of law of the public debt commission and the resulting order denying plaintiff's application.

Plaintiff's application and financial statements were regular and complied with the law, except as to the school district's ability to levy taxes to pay the bonds within the 15-mill limitation. The allocation of taxes for 1937–1938 is: School district—5.7 mills; township—7 mills; county—2.3 mills. There is a further tax levy of 7.075 mills for debt of plaintiff incurred before December 8, 1932, not subject to the 15-mill limitation. The board of education of plaintiff school district adopted a resolution as shown in the margin.* The amount necessary to pay the maturing principal and interest of the pro-

---

* RESOLUTION.

*Resolved,* that the school district hereby agrees and pledges itself to all future holders of the proposed issue of school building bonds, to the amount of $150,000, authorized at the special election of February 10, 1937, that the school district will, in each year while any of such bonds shall be outstanding, levy a tax for the payment of principal and interest thereon, at the rate of 2.63 mills on the assessed valuation, or so much thereof as may be necessary, and that if the assessed valuation shall be at any time reduced so as to make that rate insufficient, it will levy a tax at such rate as will be sufficient, and that such tax shall have priority over all other taxes within the constitutional and statutory limitations.

posed bond issue during the fiscal year 1937–1938 would be $12,500, $5,000 principal and $7,500 interest. The tax rate necessary to cover such payments during 1937–1938 is approximately 2.63 mills, in addition to the 5.7 mills and the 7.075 mills levied by plaintiff for debt service during the fiscal year for obligations incurred prior to December 8, 1932. Appellant urges the necessary money could be raised by a tax of 8.33 mills, which could be lowered by a reduction in operating expenses. The commission held, as the school district could not be sure of either, it could not comply with Act No. 273, § 5, Pub. Acts 1925 (2 Comp. Laws 1929, § 2694), as amended, requiring a sufficient tax levy to pay principal and interest of bonds, and refused to issue the certificate. In denying the certificate, the reasons set forth in the margin * were stated.

The Constitution of Michigan (1908), art. 10, § 21, provides:

---

* CONCLUSION OF LAW.

1. The public debt commission cannot issue its certificate that the bonds comply with Act No. 273, Pub. Acts 1925, as amended, unless it finds that the school district can obligate itself to levy a tax sufficient to pay principal and interest of the bonds as required by section 5 of said act.

2. It is not certain that the school district can obligate itself to levy a tax at a rate greater than 4 mills, the minimum required by Act No. 62, Pub. Acts 1933, as amended, to be allocated to the school district.

3. It is not certain that the school district can obligate itself to levy a tax sufficient to pay principal and interest of the bonds if such tax would require a reduction of the tax rate for operating expenses.

4. It is not certain that the school district can obligate itself to levy a tax sufficient to pay principal and interest of the bonds if such tax would prevent the levy of a tax of 2¾ mills for operating expenses necessary to qualify the school district for State aid under Act No. 236, Pub. Acts 1933, as amended by Act No. 249, Pub. Acts 1937.

5. It is not certain that the school district can obligate itself to levy a tax sufficient to pay the principal and interest of the bonds if the future taxing power of the school district should be impaired by reduction of assessed valuation, reduction of minimum allocation or future issues of bonds.

"The total amount of taxes assessed against property for all purposes in any one year shall not exceed one and one-half per cent. of the assessed valuation of said property, except taxes levied for the payment of interest and principal on obligations heretofore incurred, which sums shall be separately assessed in all cases: Provided, That this limitation may be increased for a period of not to exceed five years at any one time, to not more than a total of five per cent. of the assessed valuation, by a two-thirds vote of the electors of any assessing district, or when provided for by the charter of a municipal corporation: Provided further, That this limitation shall not apply to taxes levied in the year 1932."

This constitutional provision initiated by the electors was adopted at the general election of November 8, 1932, and took effect December 8, 1932, in accordance with Const. 1908, art. 17, § 2.   Before the adoption of this amendment, there was no constitutional limitation on the power of school districts to levy taxes.

Act No. 273, §§ 5, 9, Pub. Acts 1925 (1 Comp. Laws 1929, §§ 2694, 2698), as amended by Act No. 2, Pub. Acts 1937 (Ex. Sess.), provides, among other things:

"SEC. 5.   Whenever any money shall be borrowed by any municipality it shall be the duty of every officer or official body charged with any duty in connection with the determination of the amount of taxes to be raised or with the levying of such taxes, to include in the amount of taxes levied each year an amount sufficient to pay the annual interest on all such loans and any instalments of the principal thereof, falling due before the time of the following year's tax collection, and all payments required to be made to sinking funds. * * * No limitation in any statute or charter shall prevent the levy and collection of the full amount of taxes required by this section for the payment of debts, but nothing

herein shall authorize the levy of a tax for any other purpose exceeding the existing tax limitation.'' (Comp. Laws Supp. 1937, § 2694).

''SEC. 9.    Before any municipality shall issue any bonds, or other obligations, * * * the officer having charge of its financial records shall transmit to the public debt commission a sworn statement showing the dates of issuance, purposes, amounts and maturities of all bonds or other indebtedness outstanding, the assessed valuation of all taxable property in the municipality, the total amount of general taxes and special assessments falling due during the preceding fiscal year, and the amount of such taxes and assessments delinquent at the time of making such statement, the condition of all sinking funds, whether the municipality is in default in the payment of any of its bonds or other obligations or interest thereon and the extent of such default, the existing tax rate, and such other information as the public debt commission may require.    (If) The public debt commission, upon the information and evidence received by the commission, shall determine that the proposed bonds or obligations comply with the requirements of this act, it shall make a certificate to that effect and forward the same to the officer of the municipality from whom the statement was received.'' (Comp. Laws Supp. 1937, § 2698.)

Act No. 62, Pub. Acts 1933, as amended by Act No. 30, Pub. Acts 1934 (1st Ex. Sess.) (Comp. Laws Supp. 1935, § 3551–21 *et seq.*, Stat. Ann. § 7.61 *et seq.*), provides in section 5 for the creation of a county tax allocation board, and its membership. Section 11 deals with the powers and duties of the board.    Subdivision (e) provides:

''The board shall approve minimum tax rates as follows: for the county, three mills; for school districts, four mills; for townships, one mill: *Provided,* That if the average tax rate levied for the operating

purposes of any county or school district or township for its last three fiscal years shall be less than such minimum tax rate, such average tax rate shall be the minimum tax rate allowed to such local unit: *Provided further,* That no local unit shall be allowed a tax rate in excess of what would be required according to its proposed budget."

Subdivision (f) provides:

"The board shall divide the balance of the net limitation tax rate between all local units after due consideration of the needs of the several local units, the importance to the public of functions of local units which might have to be curtailed, the need of local units for construction or repair of public works, the proposed or accomplished transfer of functions from one local unit to others, and any other facts or matters concerning the operations of local units which the board may deem relevant: *Provided,* That no local unit shall be allowed a tax rate in excess of what would be required according to its proposed budget. The board shall approve a maximum tax rate for each local unit consisting of the minimum tax rate, if any, provided in subsection (e), added to the tax rate determined under this subsection."

Act No. 236, Pub. Acts 1933, as amended by Act No. 249, Pub. Acts 1937, provides:

"SEC. 32. Each school district shall apply the moneys received by it under the terms of this act on salaries of teachers and other employees, on tuition, on transportation, lighting, heating and ventilation and water service and on the purchase of textbooks and other supplies; and no part of said money shall be applied or taken for any purpose whatsoever except as above provided." (Comp. Laws Supp. 1937, § 8150–24g.)

"SEC. 36. No school district shall be allotted or paid any sum under the provisions of this act in any

year, unless it has voted to raise and there has been levied, in the fiscal year in which the allotment is made, at least a two and three-quarters mill tax on the local assessed valuation of the property within said district, for the purposes included in the operation cost of said district, determined as in this act provided, and has certified such fact to the superintendent of public instruction." (Comp. Laws Supp. 1937, § 8150–24k.)

The primary school interest fund may not be used for building a schoolhouse without the consent of a majority of the voters of the school district. 2 Comp. Laws 1929, § 7432, subd. (8) (Stat. Ann. § 15.450[8]).

Section 2694, 1 Comp. Laws 1929, as amended by Act No. 2, § 5, Pub. Acts 1937 (Ex. Sess.) (Comp. Laws Supp. 1937, § 2694), provides:

"Whenever any money shall be borrowed by any municipality it shall be the duty of every officer or official body charged with any duty in connection with the determination of the amount of taxes to be raised or with the levying of such taxes, to include in the amount of taxes levied each year an amount sufficient to pay the annual interest on all such loans and any instalments of the principal thereof, falling due before the time of the following year's tax collection and all payments required to be made to sinking funds."

Section 14 of Act No. 2, Pub. Acts 1937 (Ex. Sess.) (Comp. Laws Supp. 1937, § 2702b), provides that in case any municipality shall be aggrieved by any action of the public debt commission, it may request a hearing upon such complaint and "the public debt commission shall have power to examine the books and records of any municipality for the purpose of ascertaining if such municipality is complying with the requirements of the commission and of the statutes of the State of Michigan, in relation

to its bonds and other obligations, and for such purposes it may require sworn statements from any officer or employee of such municipality, or may require such municipality to furnish it with a statement of its financial condition. The commission shall have full power in furtherance of its investigations, to examine witnesses on oath, compel the attendance of witnesses, the giving of testimony, and the production of books, papers and records.''

By Act No. 2, Pub. Acts 1937 (Ex. Sess.) (Comp. Laws Supp. 1937, p. 71), the title of Act No. 273, Pub. Acts 1925, was amended so as to read as follows:

"An act to regulate the issue of bonds, or other obligations, by municipalities in this State, to provide the method of payment of such bonds, or other obligations, and to prescribe the duties of municipal officers, of the public debt commission and of the State treasurer in connection therewith.''

When section 5 of this act is considered in connection with its title, it seems that bonds issued must comply with the requirements of this, other statutes, and the constitutional provision in relation to the method of payment thereof. The powers and duties of the public debt commission in relation to the issuance of bonds by municipalities is supervisory rather than ministerial. In determining the meaning of this statute, it is the primary duty of the court to ascertain, if possible, the intention of the legislature in passing it. That intention is to be drawn from an examination of the language of the act itself, the subject-matter under consideration, and the scope and purpose of the act. It is necessary to consider other statutes which may have preceded it or which relate to the same subject. The act should be so construed that all of its provisions may be rendered

harmonious and recourse may be had to the history of the legislation upon the subject-matter of the act. The presumption is that the legislature had a definite purpose in passing the statute in question. *People, ex rel. Whipple,* v. *Saginaw Circuit Judge,* 26 Mich. 342; *Detroit & Mackinac R. Co.* v. *Alpena Circuit Judge,* 152 Mich. 201; *Barstow* v. *Smith,* Walk. Ch. (Mich.) 394; *Miles, ex rel. Kamferbeek,* v. *Fortney,* 223 Mich. 552; 2 Lewis' Sutherland, Statutory Construction (2d Ed.), §§ 348, 366, 369; *Rapid Railway Co.* v. *Michigan Public Utilities Commission,* 225 Mich. 425 (P. U. R. 1924B, 585); Potter's Dwarris on Statutes and Constitutions, p. 203.

A remedial statute is designed to correct an existing law, redress an existing grievance, or introduce regulations conducive to the public good. Act No. 2, Pub. Acts 1937 (Ex. Sess.), falls within this class. Such statutes are to be liberally construed. 2 Lewis' Sutherland, Statutory Construction (2d Ed.), § 679; 1 Cooley's Blackstone (4th Ed.), p. 86; Pound & Plucknett's History and System of the Common Law (3d Ed.), p. 254.

Appellant contended the issuance of the certificate by the public debt commission, and the sale of the bonds by it, would not at all depend upon the possibility of the municipality being able to levy sufficient taxes to pay the principal and interest of the bonds as they mature. It was plaintiff's contention Act No. 2, § 5, Pub. Acts 1937 (Ex. Sess.), related to action subsequent to the issuance of the bonds and, hence, the court should not indulge in implied limitations on its power. Plaintiff urged the statutory rate which is certain, four mills, is not an implied limitation upon the bonding power of the school district. It cited *Moultrie County* v. *Fairfield,* 105 U. S. 370; *Sainer* v. *Thurston County,* 181 Wash.

552 (44 Pac. [2d] 179); *Red Springs Hotel Co.* v. *Town of Red Springs,* 157 N. C. 137 (72 S. E. 837). These cases are distinguishable upon the facts.

The object of the legislature in passing Act No. 2, Pub. Acts 1937 (Ex. Sess.), as expressed in its title, was to regulate the issue of bonds, or other obligations, by municipalities in this State, and to provide the method of payment of such bonds. The public debt commission could not carry out the legislative intent as expressed in the title to this act in setting up a method of payment of such bonds, or other obligations, unless it was reasonably certain the amount of revenue to be received would cover the municipality's obligations. Plaintiff alleges the four mills are sufficient to cover the bonds and that is all that is necessary, that whether or not there would be sufficient revenue left to operate the school is purely a matter for the school district to consider. It contended on oral argument that whether or not a school was to be operated in the plaintiff school district after the school building was erected was entirely a matter to be determined by the voters in the school district.

Not only the Ordinance of 1787, but the Constitution of 1908, provides that schools and the means of education shall forever be encouraged. The Constitution (1908), art. 11, § 9, provides:

"The legislature shall continue a system of primary schools, whereby every school district in the State shall provide for the education of its pupils without charge for tuition."

It has been settled by the Ordinance of 1787, the several Constitutions adopted in this State, by its uniform course of legislation, and by the decisions of this court, that education in Michigan is a matter

of State concern, that it is no part of the local self-government of a particular township or municipality, except so far as the legislature may have delegated powers to such local municipalities over the operation of public schools and the means of education. *Belles* v. *Burr,* 76 Mich. 1; *Attorney General, ex rel. Zacharias,* v. *Detroit Board of Education,* 154 Mich. 584; *MacQueen* v. *Port Huron City Commission,* 194 Mich. 328; *King* v. *School District No. 5,* 261 Mich. 605. The legislature has always dictated the educational policy of the State. But it has never yet provided schools should be suspended and educational facilities denied in order that a monumental school edifice might be erected and paid for.

Plaintiff contends the four mills minimum tax rate is not the limit. In view of the language of the first sentence of Act No. 2, § 5, Pub. Acts 1937 (Ex. Sess.), it is difficult to see how anyone charged with determining or levying taxes, who must include in the amount of taxes levied each year an amount sufficient to pay the annual interest on all such loans and any instalments of the principal thereof, falling due before the time of the following year's tax collection, and all payments required to be made to sinking funds, could satisfy his official obligations and perform his duty under the law by merely hoping or trusting to the reasonable discretion of the allocation board for its *pro rata* share of the excess over and above the requisite minimum to be allocated to the county, school district and township.

It is the duty of the public debt commission to pass upon the taxing situation at the time the matter of the issuance of bonds is presented to it for consideration and it cannot take into consideration conditions over which it has no control which rest upon

the discretion, not yet exercised, of the voters of the school district desiring to issue the bonds.

Section 7432, 2 Comp. Laws 1929 (Stat. Ann. § 15.450), provides every board of education shall vote such taxes that the schools may be properly managed and maintained. This section also provides:

"No moneys received from the primary school fund shall be appropriated for any other use than the payment of teachers' wages, tuition, and transportation of children as provided by law."

Act No. 236, Pub. Acts 1933, as amended by Act No. 249, § 32, Pub. Acts 1937, provides:

"Each school district shall apply the moneys received by it under the terms of this act on salaries of teachers and other employees, on tuition, on transportation, lighting, heating and ventilation and water service and on the purchase of textbooks and other supplies; and no part of said money shall be applied or taken for any purpose whatsoever except as above provided."

We cannot sustain the contention that the action of the school district in voting to issue the bonds in question constitutes a pledge upon its part to raise the tax limit in accordance with the elastic provisions of the Constitution. The record indicates that in the fiscal year 1936–1937 appellant received over $15,000 from the primary school interest fund and over $44,000 in State aid under Act No. 236, Pub. Acts 1933, as amended by Act No. 249, Pub. Acts 1937. In view of the prerequisites for receiving, and the legislative requirements as to the expenditure of the amounts received, as detailed by 2 Comp. Laws 1929, § 7432, and Act No. 236, Pub. Acts 1933, as amended by Act No. 249, Pub. Acts 1937, the school

district, unable to use such money for the payment of its bonds and the interest thereon, would be taking upon itself a substantial burden.

Plaintiff and appellant claims the legal limit is 50 mills and not 15 mills because of the elastic provision of the Constitution above mentioned. This claim deals with possibility and not actuality. No one can foretell what the future will bring forth. Plaintiff cannot say what the allocation board will do in the future and what the taxing ability of the school district in the future may be depends upon events over which the public debt commission has no control. It is the duty of plaintiff to comply with the law as it is at the present. The future status of securities which may be issued, and the plaintiff's duty to pay, is protected by constitutional and statutory provisions. While the people of the school district may have both new buildings and superior instruction if they wish to pay for them by voting increased taxes within the limits of the provisions of the Constitution, they have not as yet done so and the commission properly refused the certificate because the requirements imposed upon the plaintiff school district were not met.

The order of the public debt commission denying appellant's application is affirmed, but without costs, a public question being involved.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, CHANDLER, NORTH, and McALLISTER, JJ., concurred.