MEDLEY v CANADY

Docket No. 59114. Submitted August 18, 1982, at Detroit.—Decided
July 6, 1983. Leave to appeal applied for.

Gloria G. Medley was injured when the automobile in which she
was riding was struck by a vehicle driven by William Canady,
Sr. Canady was insured by the Motorland Insurance Company.
Canady notified Motorland of the accident. Medley filed suit in
Wayne Circuit Court against Canady. Canady forwarded pro-
cess to Motorland and Motorland received a police report.
Subsequently, Motorland was added as a party defendant. The
court, Thomas Roumell, J., entered judgment for the plaintiff
against Canady and against Motorland for interest pursuant to
§ 6 of the Uniform Trade Practices Act for its bad faith in not
paying benefits to the plaintiff. The court found that Motorland
was responsible for interest from 60 days after its receipt of the
police report until the date that the judgment was entered
against Canady. Motorland appealed. *Held:*

The trial court's award of interest to the plaintiff pursuant to
the Uniform Trade Practices Act should be reversed. The
record does not support the trial judge's ruling that the claim
was not reasonably in dispute. Following its receipt of the
police report, the facts available to Motorland were sufficiently
ambiguous to create a reasonable dispute. Motorland may have
been negligent in failing to promptly respond but there is no
evidence of conscious doing of wrong to the plaintiff as a result
of dishonest purpose or moral obliquity. The term "bad faith"
as found in the act is not simply negligence or bad judgment
but rather the conscious doing of a wrong because of dishonest
purpose or moral obliquity.

Reversed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 819.

[2, 3, 8, 11, 12] 44 Am Jur 2d, Insurance §§ 1771, 1772.
Insurer's liability for consequential or punitive damages for wrong-
ful delay or refusal to make payments due under contracts. 47
ALR2d 314.

[4, 5] 44 Am Jur 2d, Insurance § 1323 *et seq.*

[6, 7, 10] 44 Am Jur 2d, Insurance §§ 1399, 1400.

[9] 73 Am Jur 2d, Statutes §§ 278, 279.

BRONSON, P.J., dissented. He did not believe that the trial court erred in awarding interest to the plaintiff. He believed that § 6 of the act is not a penalty provision but is intended to compensate a claimant for delay in receiving insurance benefits. He does not believe that the trial court erred in finding that Motorland's refusal to pay benefits was in bad faith. The issue of an insurer's bad faith should be left to the trier of fact. He would affirm the trial court's award of interest.

### OPINION OF THE COURT

1. APPEAL — FINDINGS OF FACT — COURT RULES.

A finding of fact by a trial judge is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed (GCR 1963, 517.1).

2. INTEREST — INSURANCE — PENALTIES.

Four elements must coexist in order to apply the statutory provision for payment of 12% interest by an insurer which in bad faith does not pay benefits where the claimant is a third-party tort claimant: (1) satisfactory proof of loss must be received by the insurer; (2) liability of the insurer for the claim must not be reasonably in dispute; (3) the insurer must have refused payment of the claim; and (4) the refusal to pay must have been in bad faith (MCL 500.2006[4]; MSA 24.12006[4]).

3. INTEREST — INSURANCE — PENALTIES.

The statutory provision for payment of 12% interest by an insurer which does not pay benefits in a timely manner is a penalty which is to be assessed only against insurers which procrastinate in paying meritorious claims (MCL 500.2006[4]; MSA 24.12006[4]).

4. INSURANCE — CLAIMS.

An insurance claim is more than just a notice of accident and injury; it contemplates a demand for relief as well.

5. INSURANCE — CLAIMS — LAWSUITS AGAINST INSURED.

A complaint filed against an insured of which the insurer received notice constituted a claim against the insurer where the suit was a demand, derivatively against the insurer, for money pursuant to its insurance contract with the insured.

6. INSURANCE — BAD FAITH.

An insurer may be held liable for bad faith in refusing settle-

ment; bad faith is a state of mind which must be determined from proof of conduct.

7. INSURANCE — BAD FAITH.

The term bad faith found in the Uniform Trade Practices Act is not simply negligence or bad judgment but rather the conscious doing of a wrong because of dishonest purpose or moral obliquity; it is not merely the lack of good faith, but the opposite of good faith (MCL 500.2006[4]; MSA 24.12006[4]).

DISSENT BY BRONSON, P.J.

8. INSURANCE — PENALTIES — BAD FAITH.

*The statutory provision for payment of 12% interest by an insurer which does not pay benefits in a timely manner is not punitive in nature but is primarily compensatory and is intended to compensate a claimant for the value which he is deprived of while the insurer withholds money due him (MCL 500.2006[4]; MSA 24.12006[4]).*

9. STATUTES — JUDICIAL CONSTRUCTION.

*A liberal construction should be applied to the remedial provisions of a statute where the statute has penalty provisions but also grants a private right to be enforced by a private civil action; a remedial statute should be construed liberally in order to effectuate its purpose.*

10. INSURANCE — BAD FAITH.

*The term "bad faith" as found in the Uniform Trade Practices Act means simply the lack of a "good faith" excuse; the wilful or negligent failure to inquire where the law imposes a duty to inquire constitutes · bad faith (MCL 500.2006[4]; MSA 24.12006[4]).*

11. INSURANCE — BAD FAITH — INTEREST.

*A claimant need not show an insurer's active, conscious wrongdoing or ill will or fraud in order to demonstrate an insurer's bad faith for purposes of the statutory provision providing for payment of 12% interest by an insurer which does not pay benefits in a timely manner in bad faith (MCL 500.2006[4]; MSA 24.12006[4]).*

12. INSURANCE — BAD FAITH.

*The issue of an insurer's bad faith in not paying benefits should be left to the trier of fact.*

*Lopatin, Miller, Freedman, Bluestone, Erlich,*

*Rosen & Bartnick* (by *Richard E. Shaw*), for plaintiff.

*Dickinson, Mourad, Brandt, Hanlon & Becker* (by *Ronald R. Hanlon*); *Gromek, Bendure & Thomas* (by *Carl L. Gromek* and *Nancy L. Bosh*), of counsel, for defendant.

Before: BRONSON, P.J., and MACKENZIE and K. N. SANBORN,* JJ.

K. N. SANBORN, J. Defendant Motorland Insurance Company appeals as of right from a judgment against it pursuant to the Uniform Trade Practices Act, MCL 500.2001 *et seq.;* MSA 24.12001 *et seq.*

Plaintiff Medley was injured in an automobile collision on October 24, 1977. Defendant William Canady reported the collision to defendant Motorland on November 14, 1977. Plaintiff filed suit on December 9, 1977, but did not serve Canady until May 5, 1978. Canady then forwarded process to Motorland. Motorland received a police report on December 15, 1977. Motorland was added as a party defendant on January 14, 1980. Plaintiff alleged that Motorland was liable for interest under § 6 of the Uniform Trade Practices Act.

Following a bench trial, the trial judge ruled that Canady was liable for plaintiff's injuries in the amount of $830,000.

The parties agreed to submit the trade practices claim to the trial judge on stipulated facts. The trial judge issued a written opinion awarding plaintiff 12% interest on Motorland's $20,000 liability limit from 60 days after receipt of the police

---

* Circuit judge, sitting on the Court of Appeals by assignment.

report until April 23, 1981, the date that the principal judgment was entered.

We review the decision below under the "clearly erroneous" standard found in GCR 1963, 517.1. The trial judge's ruling will not be reversed unless, on the entire evidence, we are left with the definite and firm conviction that a mistake has been made. *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976).

Motorland's arguments on appeal challenge the trial judge's application of MCL 500.2006(4); MSA 24.12006(4) to the stipulation of facts for Count II.

MCL 500.2006(4) provides in relevant part:

"Where the claimant is a third party tort claimant, then the benefits paid shall bear interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum if the liability of the insurer for the claim is not reasonably in dispute and the insurer has refused payment in bad faith, such bad faith having been determined by a court of law."

It is immediately apparent that four elements must coexist in order for this provision to apply: (1) that satisfactory proof of loss be received by the insurer; (2) that the liability of the insurer for the claim not be reasonably in dispute; (3) that the insurer refused payment of the claim; and (4) that the refusal to pay was in bad faith.

The statute is intended as a penalty to be assessed against insurers who procrastinate in paying meritorious claims in "bad faith". *O J Enterprises, Inc v Ins Co of North America,* 96 Mich App 271, 274; 292 NW2d 207 (1980); *Fletcher v Aetna Casualty and Surety Co,* 80 Mich App 439, 445; 264 NW2d 19 (1978). Unlike the 6% judgment interest provision of MCL 600.6013; MSA 27A.6013, it evinces no intent to compensate a

plaintiff for the delay in recovering funds rightfully his. As a penalty, the statute is to be strictly construed.

The obligation of a plaintiff to supply a satisfactory proof of loss must be read in light of MCL 500.2006(3); MSA 24.12006(3), which provides in relevant part:

"An insurer shall specify in writing the materials which constitute a satisfactory proof of loss not later than 30 days after receipt of a claim unless the claim is settled within the 30 days."

The statute does not deal with the effect of an insurer's failure to specify what constitutes a satisfactory proof of loss.

It is undisputed that Motorland did not specify in writing what would constitute a satisfactory proof of loss at any time during this litigation.

The trial judge, in effect, found that a claim was made when Motorland received notice of the collision from its insured and found that failure to specify the required proof of loss excused the requirement of a proof of loss.

We agree with appellant that the trial court erred by finding that a claim had been made when Motorland was notified that its insured had probably caused an accident in which plaintiff may have been injured. A claim is more than just a notice of accident and injury; it contemplates a demand for relief as well. *Avril v United States*, 461 F2d 1090, 1091 (CA 9, 1972).

We disagree with appellant, however, that the notice of plaintiff's lawsuit against its insured did not constitute a claim. The suit was a demand, derivatively against Motorland, for money pursu-

ant to its insurance contract with defendant Canady. If the statute is to meet its purpose of encouraging prompt payment of claims, "claim" must be interpreted to include a complaint against an insured of which the insurer received notice. Further, reading MCL 500.2006(3) and 500.2006(4) together, we conclude that failure to specify in writing the materials which constitute satisfactory proof of loss excuses the requirement of said proof of loss in MCL 500.2006(4). No other interpretation would reasonably effectuate the intent of § 6.

Appellant challenges the trial judge's finding on the second element—that the liability of Motorland was not reasonably in dispute.

The trial judge found that Motorland received notice of the collision within 30 days of its occurrence. A police report was then procured which the trial judge characterized as catastrophic in terms of the patently wilful negligence of Motorland's insured and the extreme seriousness of the injuries sustained by plaintiff. The trial judge stated that the culpability of Motorland was completed by a note to the file saying in effect, "[w]e have an open B.I.R [bodily injury residual]." The trial judge then indicated that Motorland should have taken affirmative steps and should have settled for the full amount of the policy .

The record before both courts is the stipulation of facts for Count II.

The proof of loss referred to by the trial judge is attached to the stipulation of facts as Exhibit No. 1. It is exculpatory as to Motorland's insured but does indicate that the insured received a careless driving citation. The note referred to is Exhibit No. 2. When read in its entirety, it instructs Motorland's employee to "review for liability" when the police report comes in, including contact-

ing any witnesses. If there is no liability, the file is to be referred to the drafter's attention.

The police report is Exhibit No. 3. It describes the insured's vehicle as "going approximately 85 m.p.h. and going in and out of traffic". Three injuries are indicated. The injury of plaintiff is indicated as type "A": "Any injury other than fatal which prevents normal activities and generally requires hospitalization". The report also indicated that Motorland's insured was cited for a traffic law violation.

On reviewing the stipulated facts in light of the trial court's findings, we are left with a definite and firm conviction that a mistake has been made. The record does not support the trial judge's ruling that the claim was not reasonably in dispute. Following receipt of the police report, the facts available to Motorland were sufficiently ambiguous to create a reasonable dispute.

Motorland also challenges the trial judge's finding that its refusal to pay was in bad faith.

The trial judge held that the actions of Motorland "were a classic example of what a bad faith refusal to pay amounts to in its most rudimentary definition". The trial judge pointed to the following acts: (1) failure to properly evaluate the seriousness of the police report; (2) failure to determine the extent of plaintiff's injuries; (3) conducting no further investigation after receiving the complaint; (4) failing to send for hospital records after notice of the claimed injury; (5) not offering to pay policy limits after receiving plaintiff's interrogatories; (6) failing to respond to plaintiff's demand letter; (7) misplacing the files; and (8) failing to consult with its in-home committee for approval of payment of plaintiff's demand.

The term "bad faith" is not defined in MCL 500.2006(4).

At the outset, it is evident that "bad faith" is a state of mind which must be determined from proof of conduct. Thus, we look to the conduct of Motorland's agents. See *Wakefield v Globe Indemnity Co,* 246 Mich 645; 225 NW 643 (1929). In *Wakefield,* the Michigan Supreme Court adopted the majority rule that an insurer may be held liable for bad faith in refusing settlement. In so doing, the Court gave some indication of what does and does not constitute bad faith. The Court noted that refusal of settlement under the *bona fide* belief that they might defeat the action, or keep the verdict within the policy limits, or have a "fighting chance", or even under mistake of judgment is not bad faith. 246 Mich 651. On the other hand, bad faith might exist where there is an arbitrary refusal to settle for a reasonable amount, or where it is apparent that a trial would result in a judgment in excess of the policy limit, or indifference to the effect of refusal on the insured, or failure to fairly consider a compromise and facts presented and pass honest judgment thereon.

Bad faith is defined in Black's Law Dictionary, 4th ed, p 176 as:

"The opposite of 'good faith,' generally implying or involving actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive."

The overwhelming majority of sister states defining bad faith in insurance contract contexts require active wrongdoing with improper motive. In *Harrod v Meridian Mutual Ins Co,* 389 SW2d 74, 76 (Ky, 1965), bad faith was required to be more than negligence: "It imports a dishonest purpose of

some moral obliquity. It implies conscious doing of wrong. It means a breach of a known duty through some motive of interest or ill will. It partakes of the nature of fraud * * *." In *Palombo v Broussard,* 370 So 2d 216, 220 (La App, 1979), the Court reviewed Black's definition of bad faith and other definitions requiring wilful failure to respond to plain obligations or a breach from some motive of interest or ill will. In *Stath v Williams,* 174 Ind App 369, 375; 367 NE2d 1120 (1977), "bad faith" was defined as not simply bad judgment or negligence, rather the conscious doing of a wrong because of dishonest purpose or moral obliquity. "It is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will." See, also, *Gulf Atlantic Life Ins Co v Barnes,* 405 So 2d 916 (Ala, 1981); *Witt v Pennsylvania National Mutual Casualty Ins Co,* 117 Ga App 838; 162 SE2d 251 (1968).

We consequently hold that the term "bad faith" in MCL 500.2006(4) is not simply negligence or bad judgment but rather the conscious doing of a wrong because of dishonest purpose or moral obliquity. It is not merely the lack of good faith, but the opposite of good faith.

It remains to apply this definition to the stipulated facts in this record.

Motorland received the claim on May 16, 1978. The complaint was turned over to appellant's legal department which answered on May 24, 1978, and filed interrogatories directed to plaintiff. Attorney Dodson subpoenaed the police records and the driving record of plaintiff. Two depositions of plaintiff were adjourned for unknown, insignificant reasons. On July 11, 1979, plaintiff's deposition was taken and medical and hospital reports were

given to Motorland. Motorland at that time felt that Canady was probably liable. Canady's deposition was taken in which he denied liability. On July 13, 1979, plaintiff's counsel demanded policy limits. Dodson submitted evidence of plaintiff's injuries to the No-Fault Committee and obtained settlement authority on July 23, 1979. Dodson did nothing further until receiving a letter from plaintiff's counsel on December 6, 1979. On January 2, 1980, defendant offered a settlement in the amount of policy limits, $20,000.

We fail to find a bad faith refusal to pay on the part of Motorland on these stipulated facts. They demonstrate that Motorland may have been negligent in failing to promptly respond in July of 1979. However, there is no evidence of conscious doing of wrong to plaintiff as a result of dishonest purpose or moral obliquity.

We are left with a definite and firm conviction that a mistake has been made by the trial judge. Therefore, the trial judge's award of interest pursuant to the Uniform Trade Practices Act is reversed and this cause remanded for entry of judgment of no cause of action on plaintiff's Uniform Trade Practices count.

Affirmed. Costs to appellant.

MacKENZIE, J., concurred.

BRONSON, P.J. *(dissenting).* I respectfully dissent. First, I do not share the majority's view that § 6[1] must be characterized as a penalty provision. Interest under § 6 is intended to compensate the claimant for the value which she is deprived of while the insurer withholds money due her. Its purpose is essentially the same as that of prejudg-

---

[1] MCL 500.2006; MSA 24.12006.

ment interest statutes and rules allowing precomplaint interest as an element of damages. The fact that interest paid pursuant to § 6 must be offset by interest paid by the insurer pursuant to an award convinces me that the § 6 interest is primarily compensatory, not punitive.

Having decided that interest under § 6 is compensatory rather than punitive in nature, I am guided by certain canons of legislative interpretation. The statute need not be construed narrowly, as when a penalty is imposed. *Goetz v Black,* 256 Mich 564, 572-573; 240 NW 94 (1932). Instead, § 6 must be viewed as a remedial provision, designed to redress existing grievances and introduce regulation conducive to the public good. See *In re School Dist #6, Paris & Wyoming Twps, Kent County,* 284 Mich 132, 144; 278 NW 792 (1938). While penalties are available for violations of the Uniform Trade Practices Act, the penal provisions of the act are not at issue here. Where a statute has penalty provisions but also grants a private right to be enforced by private civil action, it is remedial as well as penal; a liberal construction must be applied to the remedial provisions. *Robinson v Harmon (On Rehearing No 2),* 157 Mich 276, 278; 122 NW 106 (1909). Finally, a remedial statute must be construed liberally in order to effectuate its purpose.

I am not convinced that the trial court made a mistake in finding that Motorland's refusal to pay was in bad faith. Although the term "bad faith" is not defined in § 6, I believe that the term should be construed broadly to effectuate the remedial purposes underlying that section. In the present context, the term "bad faith" means simply the lack of a "good faith" excuse. See *Hogerheide v Hickey,* 2 Mich App 580, 584; 141 NW2d 357

(1966). The wilful or negligent failure to inquire
where the law imposes a duty to inquire consti-
tutes bad faith. *Twitchell v Glenwood-Inglewood
Co,* 131 Minn 375; 155 NW 621 (1915). The lan-
guage of the opinion in *Wakefield, supra,* is consis-
tent with a definition of "bad faith" which is far
more flexible than the narrow, strained one ap-
plied by the majority. The Court in *Wakefield*
observed:

"[T]he insurer does not act in bad faith if it refuses
settlement in the honest belief that it has a fair chance
of victory, or of keeping the verdict within the policy
limit, or * * * that the compromise amount is exces-
sive, or if it has legal defenses * * *. On the other
hand, arbitrary refusal to settle for a reasonable
amount, where it is apparent that suit would result in a
judgment in excess of the policy limit, indifference to
the effect of refusal on the insured, failure to fairly
consider a compromise and facts presented and pass
honest judgment thereon, or refusal upon grounds
which depart from the contract and the purpose of the
grant of power, would tend to show bad faith." 246
Mich 652-653.

The foregoing language does not contain any re-
quirement that the plaintiff show "active" and
"conscious" wrongdoing, "ill will" or "fraud" in
order to demonstrate an insurer's bad faith for
purposes of § 6. Furthermore, given that the
*Wakefield* opinion sets forth guidelines which are
relatively clear and complete, I do not believe that
it is necessary to resort to out-of-state authority to
import any such requirement.

I believe that Motorland's course of conduct fell
within the ambit of the Court's standard of "bad
faith" in *Wakefield.* There was no reasonable dis-
pute over Motorland's liability on the claim. The
police report revealed that the insured had driven

his car into the rear of plaintiff's car and that the
former had been cited for careless driving. At least
one witness stated that the insured had been
driving at speeds up to 85 miles per hour, weaving
in and out of traffic. Motorland placed a note in its
file stating, "We have an open B.I.R." Under these
circumstances, Motorland could not have reason-
ably believed that it had a "fair chance" of either
escaping liability or keeping the verdict within the
policy limits. Certainly, it could not have believed
that the proposed settlement amounts were exces-
sive, given the far higher verdict which resulted at
trial. There was no showing that Motorland rea-
sonably relied on any legal defenses in prolonging
its refusal to pay. The trial court found that
Motorland neither investigated the case after re-
ceiving the complaint nor offered to pay policy
limits after receiving interrogatories. The court
also found that Motorland failed to investigate the
extent of plaintiff's injuries, misplaced files, failed
to respond to plaintiff's demand letter and failed to
consult with its in-house committee for approval of
paying plaintiff's demand. I believe that this is
precisely the sort of "arbitrary" and "indifferent"
conduct which the *Wakefield* Court condemned as
"bad faith".

Finally, I cannot overlook what I believe to be
an important aspect of the *Wakefield* opinion,
namely, that the issue of an insurer's bad faith
should be left to the trier of fact. The Court in
*Wakefield* admonished:

"Where there is any evidence whatever of bad faith,
the issue is for the jury. Mr. Burritt's testimony and
Mr. Campbell's silence were evidence that the defen-
dants acted in bad faith and required submission of the
issue to the jury." 246 Mich 655.

It is my belief that under *Wakefield,* the issue of Motorland's bad faith should have been left to the trial court which served as trier of fact below.

I would affirm the trial court's award of interest under § 6.