Norman Eugene AWREY,
Plaintiff-Appellee,

v.

PROGRESSIVE CASUALTY
INSURANCE COMPANY,
Defendant-Appellant.

No. 82-1363.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 10, 1983.

Decided Feb. 28, 1984.

John P. Jacobs, argued, Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, D.J. Watters, Detroit, Mich., for defendant-appellant.

Sherwin Schreier, Southfield, Mich., Richard E. Shaw, Detroit, Mich., Samuel Meklir, argued, Southfield, Mich., for plaintiff-appellee.

Before KEITH and KENNEDY, Circuit Judges and GIBSON, Senior Circuit Judge.*

CORNELIA G. KENNEDY, Circuit Judge.

Defendant-Appellant Progressive Casualty Insurance Company (Progressive) appeals from a verdict in favor of plaintiff-appellee Norman Awrey (Awrey). Awrey had alleged that Progressive had acted in bad faith in failing to offer policy limits to settle a tort action against Awrey at a time when it could have been settled for that amount, and consequently had exposed him to liability in excess of his insurance policy limits. Progressive denied acting in bad faith. It argued that its failure to settle was based on an honest belief that the tort action was not worth policy limits and that the claim could have been settled for less than policy limits.

Progressive did offer policy limits plus interest and costs during trial of that earlier tort action. This offer was refused by the injured party and a verdict of $175,-000.00 was returned against Awrey. Progressive paid the policy limits of $20,000.00, plus interest on that amount and costs. Awrey has a judgment outstanding against him for the excess. Awrey has no assets, no house, no car, no bank account, and no job.

---

* Honorable Floyd R. Gibson, Senior Judge, United States Court of Appeals for the Eighth Cir- cuit, sitting by designation.

Awrey instituted this suit against Progressive for the amount of the excess liability in the prior litigation, alleging bad faith in Progressive's failure to settle. The jury returned a verdict for Awrey. On March 23, 1982, the District Court entered a judgment for Awrey in the amount of $213,358.24, the amount of the excess liability with interest. Progressive moved for a directed verdict and a judgment notwithstanding the verdict, which were denied.

Progressive makes three arguments on appeal. First, Progressive argues that the record does not support the jury's verdict of bad faith and that judgment notwithstanding the verdict should have been granted. We agree, and consequently do not reach Progressive's other arguments, which address the measure of damages recoverable under Michigan law by an indigent plaintiff in a "bad faith failure to settle" case, and challenge the District Court judge's charge to the jury.[1] Briefly, the evidence presented to the jury on the question of bad faith was as follows.

Awrey was insured for automobile liability through Progressive with policy limits of $20,000.00. On November 2, 1975, he was involved in an automobile accident with one Roger Huston. Huston sustained injuries to his hip, knee and ankle. He sued Awrey for damages in the Ogemaw County, Michigan, Circuit Court in October of 1977. Progressive retained Robert Hetzler, an attorney in Bay City, Michigan, to represent Awrey. Progressive at that time advised Awrey, by letter, of his right to hire his own attorney, and Awrey declined to do so. On November 4, 1977, Hetzler received a file on the Huston-Awrey litigation. From this file he learned that Awrey had consumed a number of Valium pills, that he had been drinking, and that before the accident he had said that he was going to "pile his car up." Hetzler also received a police report which indicated that Awrey had crossed the center line before the accident occurred. Hetzler took Huston's deposition

in August, 1978, and learned that Huston would attempt to relate a heart condition to the accident. In October, 1978, Hetzler received Huston's hospital records and reviewed depositions of several doctors who had examined Huston. Based on these documents Hetzler concluded that Huston did not have sufficient evidence to link the heart condition to the accident.

Hetzler requested a settlement demand from Huston's attorney, Sheldon Miller, on November 1, 1978. Miller replied on November 10, that he would accept the limits of Awrey's policy with Progressive, *i.e.,* $20,000.00, but that this offer would remain open for only thirty days. Miller withdrew his offer in a letter to Hetzler dated December 27, 1978.

In early January, 1979, Hetzler recommended to Progressive that it offer Huston the policy limits of $20,000.00. Progressive wrote to the Awreys in January 1979, notifying them that Huston had demanded policy limits, but that Progressive planned to offer less than policy limits. Progressive did not disclose to the Awreys that Hetzler had recommended offering policy limits. The Awreys testified that they did not receive this letter. Progressive claims that it did not offer Huston the policy limits because a senior partner in Hetzler's firm and four attorneys at Progressive believed the suit was not worth $20,000.00 because Huston's heart condition could not be related to the accident.

Progressive extended settlement authority to Hetzler for up to $15,000.00. On January 30, 1979, Hetzler made a settlement offer of $12,000.00 to an attorney at Miller's firm. On February 13, 1979, the attorney from Miller's firm called Hetzler to tell him that the case could still be settled for the policy limits.

The case was tried in March, 1979. After opening statements at trial Hetzler offered $20,000.00, the policy limits, plus interest and costs. Huston's attorney responded with a demand for $25,000.00, which Pro-

1. Awrey argues that Progressive had not preserved these issues for appeal. Because we hold that there was insufficient evidence of

Progressive's bad faith we do not decide whether they were preserved for review.

gressive refused without communicating it to Awrey. Progressive says that it refused this counteroffer because it knew that Awrey himself had no assets with which to pay the difference between the $20,000.00 policy limits plus interest (approximately $23,-000.00) and the $25,000.00. Awrey on Hetzler's advice then admitted liability, as a trial tactic to avoid having the jury hear evidence of Awrey's consumption of alcohol and Valium prior to the accident. The only issue for trial was the amount of Huston's damages. The jury returned an award of $175,000.00. A motion for new trial alleging that the verdict was excessive was denied. No appeal was taken.

Awrey then brought this action against Progressive, alleging Progressive's bad faith in failing to settle the Huston litigation. We conclude that the evidence was insufficient to sustain the jury's verdict of bad faith and a judgment notwithstanding the verdict should have been granted.

█ In reversing the District Court, we do not hold that the trial judge committed error in denying Progressive a judgment notwithstanding the verdict. After the District Court's decision was entered, the Michigan Court of Appeals decided the case of *Medley v. Canady*, 126 Mich.App. 739, 337 N.W.2d 909 (1983), clarifying what is required to prove an insurer's bad faith. We must apply Michigan law in this diversity action, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); moreover, we must apply the law of Michigan as it now stands, rather than as it stood at the time this case was decided in the District Court. *Vandenbark v. Owens-Illinois Glass Co.*, 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941). We believe that under *Medley* Progressive cannot on the evidence presented be held liable for bad faith in its failure to settle.

The seminal case in Michigan law on an insurer's liability for failure to settle is *City*

of *Wakefield v. Globe Indemnity Co.*, 246 Mich. 645, 225 N.W. 643 (1929). The court in *Wakefield* held that an insurer is liable to its insured for a judgment in excess of liability if the insurer acted in bad faith in failing to settle the case against the insured. Since *Wakefield*, courts have had the task of determining what constitutes "bad faith" on the part of an insurer. *See Valentine v. Liberty Mutual Insurance Co.*, 620 F.2d 583 (6th Cir.1980); *Transport Insurance Co. v. Michigan Mutual Liability Insurance Co.*, 496 F.2d 265 (6th Cir.1974); *Jackson v. St. Paul-Mercury Indemnity Co.*, 339 F.2d 40 (6th Cir.1964); *McCoy v. Zurich Insurance Co.*, 509 F.Supp. 1106 (E.D.Mich. 1981), *aff'd*, 703 F.2d 564 (6th Cir.1982); *Jones v. National Emblem Insurance Co.*, 436 F.Supp. 1119 (E.D.Mich.1977); *Perlmutter v. Whitney*, 60 Mich.App. 268, 230 N.W.2d 390 (1975).

*Medley* goes beyond previous cases in its requirements to establish an insurer's bad faith. *Medley* involved a suit by an insured against his insurer for bad faith failure to pay an undisputed claim under M.C.L.A. § 500.2006(4).[2] The trial judge in *Medley* had held that the actions of the insurer "were a classic example of what bad faith refusal to pay amounts to in its most rudimentary definition." 337 N.W.2d at 912. The court had cited the following acts which it believed supported a finding of bad faith: (1) failure to properly evaluate the seriousness of the police report; (2) failure to determine the extent of plaintiff's injuries; (3) conducting no further investigation after receiving the complaint; (4) failing to send for hospital records after notice of the claimed injury; (5) not offering to pay policy limits after receiving plaintiff's interrogatories; (6) failing to respond to plaintiff's demand letter; (7) misplacing the files; and (8) failing to consult with its in-home committee for approval of payment of plaintiff's demand. *Id.*

2. We recognize that *Medley* is not a case of bad faith in failure to settle, as the instant case is. However, we see no basis for a distinction between the standard of proof for an insurer's bad faith in the context of failure to settle, and failure to pay an uncontested claim under M.C. L.A. § 500.2006(4). The Michigan Court of Appeals appears to have considered them the same.

The Michigan Court of Appeals reversed the trial court's judgment of bad faith. The court held that "bad faith" under M.C.L.A. § 500.2006(4) is "not simply negligence or bad judgment but rather the conscious doing of a wrong because of dishonest purpose or moral obliquity." 337 N.W.2d at 913. The court stated:

> We fail to find a bad faith refusal to pay on the part of [the insurer] on these stipulated facts. They demonstrate that [the insurer] may have been negligent in failing to promptly respond [to the demand letter]. However, there is no evidence of conscious doing of wrong to plaintiff as a result of dishonest purpose or moral obliquity.

*Id.*

■ The evidence of the insurer's bad faith in *Medley* and in the instant case is quite similar. In its opinion denying Progressive's motion for a directed verdict the District Court gave the following examples of evidence which it said could substantiate a verdict of Progressive's bad faith:

(1) Hetzler had evidence that Awrey had been drinking and had taken Valium before the accident with Huston and was on the wrong side of the road when the accident occurred. Hetzler did not meet with Awrey before trial to discuss his position that he was not responsible for the accident. Hetzler knew that Awrey based this claim solely on his failure to remeber the accident. These facts, said the judge, could lead the jury to the conclusion that Progressive "ignored completely" Awrey's interests in failing to persuade Awrey to admit liability prior to trial.

(2) Progressive rejected a settlement offer of $25,000.00 at trial, $5,000.00 over limits, because, according to Progressive, it knew that Awrey had no assets to pay the approximately $2,000.00 excess over the

$20,000.00 policy limits plus interest. Progressive did not inform Awrey of this offer. Other evidence in the record indicated that Awrey had paid off a prior judgment by making monthly installments. The judge found that these facts supported an inference that Progressive "did not consider plaintiff's position when an offer in excess of policy limits was made."

(3) Progressive wrote Awrey two letters describing the progress of the tort suit and telling him that he had the right to hire his own attorney. Progressive never informed Awrey of the specifics of any settlement offers,[3] and Hetzler had Progressive communicate directly with Awrey because Hetzler disagreed with the course of action that Progressive was taking. Progressive did not tell Awrey that Hetzler had recommended settling with Huston for policy limits. The court found that this evidence supported an inference that Progressive purposely withheld information that Awrey needed to protect his rights.

The evidence the trial judge describes in his example (1) closely parallels the failure of the insurer in *Medley* to evaluate properly the seriousness of the police report, to determine the extent of the plaintiff's injuries, and to conduct further investigation after receiving the complaint. Under *Medley,* these actions alone do not support a finding of bad faith. Further, Mr. Hetzler explained that he hoped to make something of Mrs. Awrey's previous statement that Huston had his lights on bright. That he exercised poor judgment in delaying the admission of liability until after opening statements in view of the very prejudicial evidence of Awrey's drinking, etc. does not rise to bad faith.

In the second example, the trial court concludes that the evidence supported an inference that Progressive did not consider

---

**3.** This was a contested issue at trial. A letter of January 29, 1979 appears in the record in which Progressive informed the Awreys of Huston's initial settlement demand of policy limits and of plaintiff's intention to offer less than policy limits. Awrey testified that he never received this letter. Transcript Vol. II at 497. Huston's attorney continued to insist on policy limits for settlement until trial, when he asked for $5,000.00 above policy limits. Thus, Huston's attorney apparently made two settlement offers, one for policy limits, of which Progressive insists that it informed Awrey, and one for over policy limits made at trial, covered in the trial judge's example (2).

Awrey's position when it did not inform Awrey of the $25,000.00 offer to which he would have been required to contribute. Mr. Hetzler testified that he did not convey the offer to Awrey because he knew he was unemployed and had no assets. Awrey's circumstances had changed since he had paid off the earlier judgment. Awrey had previously been employed and had owned a car. It was uncontested that Awrey had no job and no assets with which to pay off a judgment at the time of trial. Moreover, there was no evidence that Hetzler knew of the earlier claim which was paid in installments. It may well be that Hetzler ought to have thought of periodic payments as an alternative method of making up the shortfall but he did not. His failure to do so is not bad faith as defined in *Medley*. We cannot find anything in the record indicating that Progressive's failure to inform Awrey of the $25,000.00 offer was due to any conscious doing of wrong. Progressive did not benefit from the failure to make up the difference in periodic payments. Rather, it incurred additional legal fees by completing the trial.

In its third example the trial court apparently found that the failure to communicate the difference of opinion as to the value of the claim was evidence that Progressive acted in bad faith. We do not understand the trial court to have found that the failure to follow Hetzler's advice could be found by the jury to be bad faith. In view of Progressive's explanation that it relied upon its in-house counsel, as well as Hetzler's senior partner's evaluations, there is no basis for such a finding. That those evaluations were erroneous has been established by the jury's verdict against Awrey. That they were done in a negligent manner may also have been shown, but negligence is not bad faith.

The District Court's focus appears to be on the failure to advise Awrey that there was a difference of opinion between the attorney handling his case and other agents of the insurance company. We do not believe an insurance company has the obligation to advise an insured of differences of opinion among its agents or representatives. As a corporation, it acts through numerous persons and reaches a collective decision. Would a law firm be required to advise its client that one or more of its associates disagree with the advice the firm has given? We have been cited to no authority for such an obligation by either insurance company or law firm and decline to create one.[4] We do not pass upon whether there is a personal obligation on the part of insured's counsel which arises out of his dual role as attorney for the insured as well as for the

4. In *Wakefield*, trial counsel for the City of Wakefield had recommended acceptance of a settlement offer. He had come to the conclusion during trial that the case was hopeless and tentatively agreed on a figure. One Campbell, in the home office of the insurance company, instructed trial counsel to decline the settlement. A verdict was returned over policy limits. The minority would have permitted the insurance company's bad faith to go to the jury when Campbell gave no reason for refusing the settlement:

> Conceding that the record indicates that he could have had just cause for not approving the compromise, it is mere speculation, not evidence, to guess his probable reasons when, having had full opportunity to disclose them on the trial, he failed to do so. Whatever of good faith may be attributed to him by such speculation is more than offset by the fact that the jury was entitled to draw the inference that, if his action had been due to unjustifiable reasons, he would have said so on the stand, and that, failing to state the

reasons, he had no legitimate excuse for his action.

> The only evidence of the state of mind of any of defendants' agents was that of Mr. Burritt [trial attorney], whose opinion it was that Mr. Borski would surely recover, would obtain a large verdict, and that settlement was advisable and the amount reasonable.

246 Mich. 654–55, 225 N.W. 643 (1929).

The majority of the court, however, held that a directed verdict for defendant insurance company was proper. It held that until the insured submitted proof of bad faith no obligation rested on Campbell to deny that he acted in bad faith. Campbell had been required to make a quick decision on whether to accept the settlement. The majority held that in view of possible reasonable bases for his decision the jury were not entitled to draw the inference that he did not exercise an honest judgment or act in good faith in refusing to accept the offer made. Disagreement with trial counsel was not sufficient to permit the jury to find bad faith.

insurance company, to advise his client of his opinion. That was not a basis of the instant action for bad faith on the part of Progressive.

With respect to the trial judge's example (3), we fail to see how Progressive's action of advising Awrey of his right to hire his own attorney supports an inference that Progressive purposely withheld information that Awrey needed to protect his rights. Progressive rather exhorted Awrey to protect his rights. Progressive failed to tell Awrey that Hetzler had recommended paying policy limits. This may have been negligent, it may have been poor judgment, but we cannot say that under *Medley* this supports a finding of bad faith.

Under *Medley*, it is not enough to show that the insurer "ignored completely" and "did not consider" the insured's position in order to prove bad faith on the part of the insurer. *Medley* requires a showing that the insured engaged in the "conscious doing of wrong because of dishonest purpose or moral obliquity" for a finding of bad faith. 337 N.W.2d at 912. We find, comparing the evidence in *Medley* and in this case, that the evidence presented here—while it may support a claim of negligence against Progressive—is not sufficient to show a dishonest purpose or moral obliquity.

Accordingly, we reverse the judgment of the District Court denying Progressive's motion for a judgment notwithstanding the verdict and hold that the evidence was insufficient as a matter of law for the jury to conclude that Progressive acted in bad faith.