COMMERCIAL UNION INSURANCE COMPANY v LIBERTY
MUTUAL INSURANCE COMPANY

Docket Nos. 67250, 68242. Submitted October 4, 1983, at Detroit.—
Decided September 10, 1984. Leave to appeal applied for.

Commercial Union Insurance Company brought an action against
Liberty Mutual Insurance Company, primary insurance carrier
for WXYZ-TV under a liability policy with a policy limit of
$100,000, in Oakland Circuit Court to recover the amounts it
paid to Edith Webster, an employee of WXYZ-TV, and her
husband under its excess liability insurance policy issued to
WXYZ-TV. Commercial Union alleged that Liberty Mutual's
failure to negotiate a settlement with the Websters constituted
bad faith which caused Commercial Union to become exposed
to risk. The Websters sued WXYZ for injuries sustained by
Edith Webster. When attempts to settle the Websters' claims
failed, Liberty Mutual defended WXYZ. That trial resulted in a
$100,000 verdict in favor of the Websters. Liberty Mutual
appealed, and the Court of Appeals reversed. *Webster v WXYZ*,
59 Mich App 375 (1975). Before the reversal on appeal, Liberty
Mutual's highest settlement offer was $85,000; after the rever-
sal on the appeal, Liberty Mutual's highest settlement offer was
$50,000. Before the reversal on appeal, the Websters demanded,
at most, $110,000 to settle; after the reversal on appeal, the
highest demand to settle was $85,000. When a settlement could
not be reached, the matter again went to trial. During the
second trial, the Websters made a settlement demand of

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error §§ 555, 556.
58 Am Jur 2d, New Trial §§ 212, 213.
[2] 75 Am Jur 2d, Trial §§ 588 *et seq.*, 654.
[3, 5, 6] 44 Am Jur 2d, Insurance §§ 1399, 1403.
Excess carrier's right to maintain action against primary liability
insurer for failure to settle claim against insured. 10 ALR4th 879.
[4] 75 Am Jur 2d, Trial § 590.
[7, 8] 5 Am Jur 2d, Arbitration and Award § 139.
20 Am Jur 2d, Costs § 6.
Liability of parties to arbitration for costs, fees, and expenses. 57
ALR3d 633.

$150,000, which Liberty Mutual refused. A jury thereafter returned a verdict of $700,000 in favor of the Websters. Liberty Mutual tendered its $100,000 and did not appeal. Commercial Union was unsuccessful in its appeal of the matter (Docket No. 30233, April 25, 1977 [unreported], *lv den* 401 Mich 817 [1977]) and thereafter paid to the Websters $854,135.61, its $600,000 portion of the $700,000 judgment plus its share of interest and costs. Commercial Union brought its action against Liberty Mutual. The matter went to mediation and the mediation panel returned an evaluation of no cause of action on Commercial Union's claim. Commercial Union rejected the mediation evaluation. Following a jury trial, a verdict of no cause of action was returned. Liberty Mutual sought attorney fees and costs on the basis that it had accepted the mediation panel evaluation and was therefore entitled to the actual costs associated with its defense at trial. Commercial Union moved for a judgment notwithstanding the verdict or for a new trial. The trial court, Robert L. Templin, J., denied the motion for judgment notwithstanding the verdict or a new trial and awarded attorney fees and costs to Liberty Mutual. Commercial Union appealed separately the order granting actual costs to Liberty Mutual and the order denying its motion for judgment notwithstanding the verdict or a new trial. The appeals were consolidated. *Held:*

1. It was error mandating reversal for the trial court to include in the instructions to the jury relative to Liberty Mutual's theory of the case reference to Liberty Mutual's estoppel theory, since that theory was neither legally nor procedurally supportable in this case. Since the jury was not instructed that the parties' theories of the case might not correctly state the law, the jury may have treated the instructions as to the theory of the case as the equivalent of an estoppel instruction.

2. The trial court erred in instructing the jury that bad faith in the context of this case is equated with duplicity or deceitful conduct.

3. Since Commercial Union rejected the mediation board evaluation of no cause of action and Liberty Mutual accepted that evaluation, Commercial Union would be liable for any costs arising out of a trial which resulted in a verdict of no cause of action. The question of costs is held in abeyance pending the outcome of the retrial.

Reversed and remanded.

1. MOTIONS AND ORDERS — NEW TRIAL — APPEAL.

The Court of Appeals will not reverse a trial court's decision to

grant or deny a motion for new trial unless the trial court abused its discretion by doing so.

2. TRIAL — JURY INSTRUCTIONS — THEORY OF THE CASE.

A party is entitled to have the trial court explain its theory of the case to the jury if the requested instruction is supported by the evidence and is legally correct.

3. INSURANCE — EXCESS LIABILITY INSURERS — ACTIONS — BAD FAITH — ESTOPPEL.

An excess liability insurer is not estopped from maintaining a direct action against the primary liability insurer for bad faith in the handling of a suit or settlement by reason of the fact that the excess liability insurer did not undertake an active role in the handling of the suit or settlement where the proofs fail to establish that the inaction of the excess liability insurer constituted an intentional and knowing relinquishment of its rights or that the inaction of the excess liability insurer was so grossly negligent as to have encouraged or influenced the primary liability insurer to act to its own disadvantage.

4. TRIAL — JURY INSTRUCTIONS — THEORY OF THE CASE.

It is error mandating reversal for a trial court to include in its instructions to the jury as to a party's theory of the case a theory which is not legally or procedurally supported where the court did not clearly instruct the jury that the parties' theories might not correctly state the law, since under the circumstances the giving of the legally incorrect theory was equivalent to giving an improper instruction.

5. INSURANCE — EXCESS LIABILITY INSURERS — SETTLEMENTS — BAD FAITH.

Bad faith in the context of an action by an excess liability insurer against the primary liability insurer for using bad faith in the handling of a suit or settlement does not mean duplicity or deceitful conduct, but rather means an arbitrary refusal to settle for a reasonable amount where it is apparent that suit would result in a judgment in excess of the primary policy limit, an indifference to the effect of the refusal of an offer to settle, a failure to fairly consider a compromise and pass honest judgment on the compromise or a refusal to settle upon grounds which depart from the terms of the insurance contract and the contract's purpose.

6. INSURANCE — JURY INSTRUCTIONS — SETTLEMENTS — BAD FAITH.

A jury in an action by an excess liability insurer against the primary liability insurer for using bad faith in the handling of

a suit or settlement, upon a proper request, should be instructed that, in making its determination whether the primary insurer had used bad faith in its handling of the claim, it may consider whether the primary insurer failed to make a proper investigation of the claim and whether the primary insurer refused to accept a settlement within the primary policy limits when the risks of rejecting the offered settlement were out of proportion to the chances of a more favorable settlement.

7. COSTS — COURT RULES — MEDIATION.

The court rules providing for responsibility for the costs of litigation following mediation should not be construed with wooden literalness if such a construction would be inconsistent with their purpose, ie., to place the burden of litigation costs upon the party who insists upon a trial by rejecting a proposed mediation award (GCR 1963, 316.7[b][1], 316.8).

8. COSTS — COURT RULES — MEDIATION.

A plaintiff who rejects a mediation panel evaluation of "no cause of action" on its claim and at the subsequent trial receives a verdict of "no cause of action" must pay actual costs to the defendant (GCR 1963, 316.7[b][1], 316.8).

*Franklin, Petrulis & Lichty, P.C.* (by *J. Steven Johnson, Bruce W. Franklin* and *Richard R. Danforth),* for plaintiff.

*Davidson, Gotshall, Kohl, Secrest, Wardle, Lynch & Clark* (by *Michael L. Updike),* for defendant.

Before: M. J. KELLY, P.J., and HOOD and SHEPHERD, JJ.

HOOD, J. Plaintiff appeals as of right from the trial court's denial of plaintiff's motion for judgment notwithstanding the verdict or for new trial and from the court's order taxing costs and attorney fees.

In 1968, Edith Webster was injured at her work

at WXYZ-TV. Liberty Mutual was WXYZ's primary insurance carrier, and its policy limit was $100,000. Commercial Union was WXYZ's excess insurance carrier. Edith Webster and her husband sued WXYZ, and, despite attempts to settle, the parties went to trial. Liberty Mutual defended WXYZ. Following that trial in 1973, a jury awarded the Websters $100,000. That award was reversed by this Court. *Webster v WXYZ*, 59 Mich App 375; 229 NW2d 460 (1975), *lv den* 395 Mich 751 (1975).

Before reversal on appeal, Liberty Mutual's highest settlement offer was $85,000. After winning its appeal, Liberty Mutual's highest settlement offer was $50,000. Before this Court reversed the verdict in the Websters' first trial, the Websters had, at most, demanded $110,000 to settle. After the reversal, the Websters' highest demand was $85,000. Because settlement could not be reached, the Websters again went to trial against WXYZ. During the second trial, the Websters made a settlement demand of $150,000. Liberty Mutual refused. The jury awarded the Websters $700,000.

Following the second verdict and award, Liberty Mutual tendered its $100,000 policy limit and did not appeal. Commercial Union unsuccessfully appealed to this Court, then paid $854,135.61 to the Websters. Commercial Union subsequently filed this action alleging that Liberty Mutual's failure to negotiate a settlement with the Websters constituted bad faith, *Wakefield v Globe Indemnity Co,* 246 Mich 645; 225 NW2d 643 (1929), thus causing Commercial Union to become exposed to risk. Following trial, a jury found no cause of action against Liberty. Commercial Union now raises on appeal the same issues it raised in its motion for

judgment notwithstanding the verdict or for new trial.

This Court does not reverse a trial court's decision to grant or deny a motion for new trial unless the trial court abused its discretion by doing so. *Willett v Ford Motor Co,* 400 Mich 65, 70-71; 253 NW2d 111 (1977). Because we find prejudicial instructional error, we find that the trial court abused its discretion in this case, and reverse for a new trial.

Other than general standard jury instructions, the substantive instructions the trial court gave the jury included the parties' theories of the case and the definition of bad faith.

The trial court read Liberty Mutual's theory of the case over Commercial Union's objection:

"Now, it is the defendant, Liberty Mutual's theory of the case that Commercial Union, a large sophisticated insurance carrier, has sued Liberty Mutual Insurance Company, another large sophisticated insurance carrier, for money Commercial Union had to pay above the hundred thousand dollar policy limits of Liberty Mutual.

"Now, Liberty Mutual contends that it made its decision concerning the defense and settlement of the *Webster v WXYZ* case in its honest best judgment. While it may be in light of what happened an error of judgment, Liberty Mutual denies that it acted with a dishonest or an improper motive or in bad faith.

"Liberty Mutual further contends that Commercial Union's claim for bad faith *is barred by Commercial Union's acquiescence and approval of the conduct of Liberty Mutual* in handling the *Webster v WXYZ* case. After being invited to participate in the decision making process, Commercial Union never once suggested or requested Liberty Mutual pay its policy limits. Commercial Union, in fact, approved of the case being decided by the jury at the second trial, despite the then pending

demand of one hundred and fifty thousand which was in excess of Liberty Mutual's policy limits.

"Finally, Liberty Mutual contends that Commercial Union's claim *is barred because Commercial Union did nothing to protect itself from an excessive verdict,* although it was well aware that its policy was subject to exposure. Liberty Mutual contends that Commercial Union sat on its hands. It did not act in any way to independently evaluate the Lady of Charm case, hire its own counsel, or participate in negotiations designed to resolve the litigation. *Liberty Mutual contends that Commercial Union cannot now come forward and recover from Liberty Mutual after an unfavorable judgment since it did nothing to protect itself from an excess verdict when it had the opportunity. Liberty Mutual contends that equity in (sic) the concept of fair play prohibits Commercial Union from now attempting to recover from Liberty Mutual monies it made no effort to protect* on its own.

"Now, that is the theory of the defendant, Liberty Mutual." (Emphasis added.)

Commercial Union objected to Liberty Mutual's language in its theory suggesting that Commercial Union was estopped from asserting bad faith. We agree that this language should have been eliminated by the trial court. Although a party is entitled to have the trial court explain its theory of the case to the jury if supported by the evidence, *Cryderman v Soo Line R Co,* 78 Mich App 465; 260 NW2d 135 (1977), *lv den* 402 Mich 867 (1978), a party is not entitled to a legally incorrect instruction. *Hakkers v Hansen,* 337 Mich 620, 625; 60 NW2d 487 (1953).

The trial court had correctly refused to give Liberty Mutual's requested instructions on estoppel. Liberty Mutual had failed to raise that theory as an affirmative defense, thus, that theory was arguably waived. GCR 1963, 111.2. Furthermore,

none of the proofs presented at trial supported an estoppel theory.

In *Commercial Union Ins Co v Medical Protective Co*, 136 Mich App 412, 422; 357 NW2d 861 (1984), this Court said:

"In order for plaintiff to waive its rights against defendant, it must have intentionally and knowingly relinquished those rights. *American Locomotive Co v Chemical Research Corp*, 171 F2d 115 (Ca 6, 1948), *cert den* 333 US 909; 67 S Ct 515; 93 L Ed 1075 (1949) * * * Alternatively, for estoppel by silence, the party standing by and concealing its rights must have, by its conduct, shown such gross negligence as to have encouraged or influenced the opposite party, who was wholly ignorant of its adversary's claim, to act to the latter's disadvantage. *Grand Trunk R Co v H W Nelson Co*, 116 F2d 828 (CA 6, 1941), *reh den* 118 F2d 252 (1941). An essential element of estoppel is that a party knowingly permitted the opposite party to act to its own disadvantage. *Bentley v Cam*, 362 Mich 78; 106 NW2d 528 (1960). Estoppel should only be applied where the facts are unquestionable, unambiguous, and unequivocal. *Maxwell [v Bay City Bridge Co*, 41 Mich 453; 2 NW 639 (1879)]; *Fredenburg v Lyon Lake M E Church*, 37 Mich 476 (1877)."

Because Liberty Mutual's estoppel theory could not be supported either procedurally or legally, it should not have gone to the jury within Liberty Mutual's theory of the case. Furthermore, the trial court did not clearly instruct the jury that the parties' theories might not correctly state the law. Therefore, reading Liberty Mutual's legally incorrect theory to the jury was equivalent to giving an estoppel instruction. We note that the jurors requested that the trial court reread the parties' theories to them during deliberation, and the court did so.

We also find that the trial court's bad faith instruction was, in part, erroneous. The "bad faith" instruction provided in its entirety:

"Now, as to bad faith, a lot has been said about bad faith, and of course, that is the claim here of the plaintiff, that the defendant acted in bad faith.

"Now, good or bad faith is a state of mind.

"The term bad faith as used in these instructions may be defined as involving *insincerity, dishonesty, disloyalty, duplicity, or deceitful conduct; it implies dishonesty or concealment.* An honest mistake of judgment is not in and of itself bad faith and no single fact is necessarily decisive of the issue.

"Now, the insurer does not act in bad faith if it refuses settlement in the honest belief that it has a fair chance of victory, or of keeping the verdict within the policy limit or, upon reasonable grounds that the compromise amount is excessive.

"Now, indicators of bad faith include but are not limited to the following:

"First, that the primary insurer treated the case as if it were not responsible for the entire amount.

"Also an indicator is failure to inform the insured or the excess carrier of all offers and demands and their legal significance.

"Also another indicator is failure to adequately notify the assured *[sic]* or the excess carrier of the claim and its nature.

"The arbitrary refusal to settle for a reasonable amount, where it is apparent that the suit would result in a judgment in excess of the policy limit, or indifference to the effect of the refusal on the excess carrier, or failure to fairly consider a compromise and facts presented and pass honest judgment thereon, or refusal to settle upon grounds which depart from the contract and the purpose of the grant of power, would tend to show bad faith.

"Now, the primary carrier owes the same duty to the excess carrier as the primary carrier would owe to its insured."

Commercial Union argues that the trial court erroneously went beyond the language found in *Wakefield, supra,* with language that strongly implied that the jury must find a more venal state of mind than is required by *Wakefield.* Liberty Mutual counters that argument by relying upon *Medley v Canady,* 126 Mich App 739, 749; 337 NW2d 909 (1983). The majority in *Medley,* in construing what was meant by "bad faith" as used in § 6 of the Uniform Trade Practices Act, MCL 500.2006(4); MSA 24.12006(4), first relied on the language in *Wakefield,* but then went beyond that language:

"At the outset, it is evident that "bad faith" is a state of mind which must be determined from proof of conduct. Thus, we look to the conduct of Motorland's agents. See *Wakefield v Globe Indemnity Co,* 246 Mich 645; 225 NW 643 (1929). In *Wakefield,* the Michigan Supreme Court adopted the majority rule that an insurer may be held liable for bad faith in refusing settlement. In so doing, the Court gave some indication of what does and does not constitute bad faith. The Court noted that refusal of settlement under the *bona fide* belief that they might defeat the action, or keep the verdict within the policy limits, or have a "fighting chance", or even under mistake of judgment is not bad faith. 246 Mich 651. On the other hand, bad faith might exist where there is an arbitrary refusal to settle for a reasonable amount, or where it is apparent that a trial would result in a judgment in excess of the policy limit, or indifference to the effect of refusal on the insured, or failure to fairly consider a compromise and facts presented and pass honest judgment thereon.

"Bad faith is defined in Black's Law Dictionary, 4th ed, p 176 as:

" 'The opposite of "good faith," generally implying or *involving actual or constructive fraud, or a design to mislead or deceive another,* or a neglect or refusal to fulfill some duty or some contractual obligation, not

prompted by an honest mistake as to one's rights or duties, but by some interested or *sinister motive.'*

"The overwhelming majority of sister states defining bad faith in insurance contract contexts require active wrongdoing with improper motive. In *Harrod v Meridian Mutual Ins Co,* 389 SW2d 74, 76 (Ky, 1965), bad faith was required to be more than negligence: 'It imports a dishonest purpose of some moral obliquity. It implies conscious doing of wrong. It means a breach of a known duty through some motive of interest or ill will. *It partakes of the nature of fraud * * *.'* In *Palombo v Broussard,* 370 So 2d 216, 220 (La App, 1979), the Court reviewed Black's definition of bad faith and other definitions requiring wilful failure to respond to plain obligations or breach from some motive of interest or ill will. In *Stath v Williams,* 174 Ind App 369, 375; 367 NE2d 1120 (1977), 'bad faith' was defined as not simply bad judgment or negligence, rather the conscious doing of a wrong because of dishonest purpose or moral obliquity. 'It is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will.' See, also, *Gulf Atlantic Life Ins Co v Barnes,* 405 So 2d 916 (Ala, 1981); *Witt v Pennsylvania National Mutual Casualty Ins Co,* 117 Ga App 838; 162 SE2d 251 (1968).

"We consequently hold that the term 'bad faith' in MCL 500.2006(4) is not simply negligence or bad judgment but rather the *conscious doing of a wrong because of dishonest purpose or moral obliquity.* It is not merely the lack of good faith, but the opposite of good faith". *Medley, supra,* pp 747-748.

We limit *Medley* to its holding, that is, the definition of "bad faith" as given in *Medley* applies only to that term as used in MCL 500.2006(4). We do not extend that definition to a common law "bad faith" action such as the case at bar.

"Bad faith" by an insurance company for a breach of a duty to settle is something more than negligence. *Wakefield, supra; Commercial Union v Medical Protective Co, supra.* However, unlike the

implication of the *Medley* definition, "bad faith" pursuant to *Wakefield* is something less than fraud:

"[T]he insurer does not act in bad faith if it refuses settlement in the honest belief that it had a fair chance of victory, or keeping the verdict within the policy limit, or * * * that the compromise amount is excessive, or if it has legal defenses * * *. * * * On the other hand, arbitrary refusal to settle for a reasonable amount, where it is apparent that suit would result in a judgment in excess of the policy limit, indifference to the effect of refusal on the insured, failure to fairly consider a compromise and facts presented and pass honest judgment thereon or refusal to settle upon grounds which depart from the contract and the purpose of the grant of power, would tend to show bad faith." 246 Mich 652-653.

See the dissent of Bronson, J., in *Medley, supra,* 126 Mich App 751-752.

By instructing the jury that bad faith may be defined as or equated with "duplicity or deceitful conduct", or "concealment", the trial court erroneously increased Commercial Union's burden of proof. The language defining "bad faith" in *Wakefield* is sufficient. We find the errors in the substantive instructions to the jury prejudicial and reversible.

We address two of Commercial Union's remaining claims only for purpose of retrial. First, the trial court should give the following two instructions as part of the "bad faith" definition should plaintiff request them again:

Did Liberty Mutual fail to properly investigate the claim?

Did Liberty Mutual refuse to accept a settlement within its policy limits when the risks of rejecting

a settlement were out of proportion with the chance of a favorable verdict?

These instructions comport with the *Wakefield* language and would have been helpful to the jury to decide whether bad faith had been shown.

Second, on retrial the trial court should restrict the use of the parties' mediation and arbitration rules. The rules had minimal relevancy and injected considerable confusion into the trial. The jury might have believed that Commercial Union's failure to use an alternative forum was a defense available to Liberty Mutual.

Appellant's remaining claims of trial error have no merit and we do not address them.

We now address Commercial Union's appeal from the trial court's award of costs and attorney fees. Prior to trial in this matter, a mediation panel evaluated this action pursuant to GCR 1963, 316.7. The panel's decision was "no cause of action". Commercial Union rejected the mediation evaluation and Liberty Mutual, of course, accepted it. Following trial, pursuant to Liberty's motion, the trial court awarded Liberty costs and attorney fees.

The relevant portion of the mediation rule, GCR 1963, 316.7, reads:

"(b) If any party rejects the panel's evaluation, the case proceeds to trial in the normal fashion.

"(1) If the defendant accepts the evaluation but the plaintiff rejects it and the case proceeds to trial, the plaintiff must obtain a verdict in an amount which, when interest on the amount and assessable costs from the date of filing of the complaint to the date of the mediation evaluation are added, is more than 10 percent greater than the panel's evaluation, or pay actual costs to the defendant."

The assessment of costs is mandatory and recognizes no exceptions. Nevertheless, Commercial Union argues that an award of costs under the rule is inappropriate when the mediation panel's evaluation is "no cause of action". Commercial Union argues that ten percent of zero is zero. Thus, Liberty Mutual was not entitled to costs. We disagree.

GCR 1963, 316.7 is not to be interpreted with wooden literalness if such a construction is inconsistent with its purpose. *Issa v Garlinghouse,* 133 Mich App 579; 349 NW2d 527 (1984), quoting *Maple Hill Apartment Co v Stine,* 131 Mich App 371; 346 NW2d 55 (1984). The policy underlying GCR 1963, 316.7 is to place litigation costs upon the party who insists upon a trial by rejecting a proposed mediation award. *Maple Hill, supra.*

Had the mediation panel evaluated this case at $10,000 and had Commercial Union rejected that evaluation, Commercial Union would have had to win at least $11,000 from the jury to avoid paying actual costs. Had the mediation panel returned a ten cents evaluation, Commercial Union would have had to win at least an eleven cents award. In order to conform to the spirit of the mediation rule, Commercial Union needed to win at least something to avoid costs. We perceive no reason why the mediation rule's purpose should be any different when a mediation panel evaluates a case as "no cause of action" than when it assesses a value. In *Hartford Fire Ins Co v Walter Kidde & Co, Inc,* 120 Mich App 283, 294-295; 328 NW2d 29 (1982), this Court ruled that, if plaintiff lost again on retrial, it would have to pay costs pursuant to GCR 1963, 316.7 despite that mediation panel's evaluation of no cause of action. We agree that the same rule applies in this case.

Reversed and remanded for new trial. Since this case is being reversed and remanded for new trial, the question of costs is to be held in abeyance pending the results of the new trial. Since the result in the first trial was based on improper instructions, it is a nullity and therefore no costs should be imposed arising out of that trial.