**AMERICAN HOME ASSURANCE COMPANY, Plaintiff-Appellant,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Defendant-Appellee.**

No. 84–1294.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 23, 1985.

Decided Sept. 26, 1985.

Ralph W. Barbier, Jr., Susan J. Sadler, Thomas H. Hill (argued), Mt. Clemens, Mich. for defendant-appellee.

Before MARTIN and CONTIE, Circuit Judges; and HOGAN, Senior District Judge.*

PER CURIAM.

In this diversity action, American Home Assurance Company appeals from a judgment entered against it after a bench trial on a claim that Liberty Mutual Insurance Company breached a duty of good faith owed to American. The controversy arose when Liberty, the primary insurer of an automobile liability insurance policy, failed to settle a claim made under the policy with the result that American, the excess liability carrier on the automobile, was called upon to satisfy a judgment in excess of $1,000,000. Because the standards by which a primary carrier's duty to an excess carrier have been altered by the Michigan courts subsequent to the district court's decision, we will reverse the judgment of the district court and remand the case for further consideration in light of those new standards.

Briefly, the facts are these. A driver for the insured, the United Parcel Service, made a U-turn and collided with an automobile driven by David Kocharoff. David Kocharoff was injured only slightly in the accident, but his wife, Karen Kocharoff, was killed. David filed an action in the Wayne County, Michigan, Circuit Court on behalf of himself and Karen's estate. The complaint sought damages in the amount of $1,750,000. Liberty's policy limit was $200,000 per person and $1,000,000 per occurrence. American's policy limit was $20,000,000.

Liberty was notified of the accident on the day that it occurred. An investigation by Liberty was conducted by Sally Swift, who concluded that liability for David's injuries was probable and that liability for Karen's death was clear. Counsel retained by Liberty, Konrad Kohl, also notified Lib-

* Honorable Timothy S. Hogan, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

erty that this was a case of clear liability. Nevertheless, Liberty's claims supervisor, Bryan Lasher, informed American that he believed that the case presented only questionable liability.

David (through counsel) originally demanded $250,000 to settle the case. When Liberty offered $100,000, David summarily rejected the offer and raised his demand to $450,000. There was evidence, however, that only the formal demand had been raised and that David would still consider $250,000. When American was notified of this demand change, it hired counsel, B.I. Stanczyck, for the case. Stanczyck reviewed Kohl's files and informed American that Kohl had "strongly recommended" that Liberty authorize a settlement of $200,000 because, in Kohl's words, "there could easily be a jury verdict of $500,000.00 or in excess thereof." Stanczyck also stated in his letter to American that he had suggested to the Liberty claims supervisor, Mr. Pierson, that "if he wanted to negotiate between $100,000.00 and $200,000.00 with [David's counsel], that he do so in person with the $200,000.00 in hand."

Although the auto accident occurred in October 1974 and the suit was filed in April 1975, Liberty did not offer its policy limit of $200,000 until April 1979. That offer came about when David escalated his demand to $900,000. Kohl advised Liberty to offer its policy limit at that time so that Liberty would not get "caught in the middle" between American and David. On the day that Liberty offered its limit, Stanczyck tendered $50,000 to Liberty, stating that the case could have been settled in October 1977 for $250,000, which would have required only a $50,000 contribution from American. Stanczyck asserted that Liberty's bad-faith failure to settle the case relieved American of its obligation on the excess policy.

When trial commenced on April 25, 1975, David's demand stood at $1,200,000. American, which had taken over the negotiations, offered $710,000, but that offer was rejected. The jury returned a verdict in David's favor which, after reduction for David's twenty percent comparative negli-

gence, amounted to $1,400,000 for Karen's death and $4,000 for David's injuries. American appealed the jury verdict, but Liberty did not. On February 27, 1981, American and David settled the case, and the appeal was dismissed.

American then brought this action, asserting that Liberty breached its duty to pursue settlement negotiations in good faith. The district court made exhaustive findings of fact. The court noted that Liberty failed to heed Kohl's advice to seek an early settlement in the $200,000 range because Liberty thought that it could seek contribution from David due to his negligence and because David's and Karen's "lifestyle" (i.e., the fact that she was twenty-six years old and he was nineteen when they were married) made David an unsympathetic plaintiff. The district court also found that an improper purpose could not be inferred from the long delays in the settlement negotiations because (1) Liberty's home office pressured the Detroit office to make progress on the case and (2) the delays were caused in part by the burdensome workload of the Liberty employees. Finally, the court found that Liberty adequately apprised American of the seriousness of the case because Kohl allowed American's counsel to have access to his files on the case. In those files was Kohl's letter to Liberty stating that liability in the case could well exceed $500,000.

■ On appeal, American's primary assertion of error is that the district court evaluated the "bad faith" claim under legal standards that, though perhaps proper at the time of trial, are no longer the law of Michigan. In *City of Wakefield v. Globe Indemnity Co.*, 246 Mich. 645, 225 N.W. 643 (1929), the Supreme Court of Michigan held that

[a]rbitrary refusal to settle for a reasonable amount, where it is apparent that suit would result in a judgment in excess of the policy limit, indifference to the effect of refusal on the insured, failure to fairly consider a compromise and facts presented and pass honest judgment thereon, or refusal upon grounds which depart from the contract and the purpose

of the grant of power, would tend to show bad faith. 246 Mich. at 653, 225 N.W. at 645. In *Awrey v. Progressive Casualty Insurance Co.*, 728 F.2d 352 (6th Cir.1984), we held that a Michigan Appeals Court case, *Medley v. Canady*, 126 Mich.App. 739, 337 N.W.2d 909 (1983), had refined *Wakefield* and required a plaintiff to show that the insurer "engaged in the 'conscious doing of wrong because of dishonest purpose or moral obliquity' for a finding of bad faith." *Awrey*, 728 F.2d at 357 (quoting *Medley*, 337 N.W.2d at 912). This was the state of the law when the district court rendered judgment.

Subsequent to the district court's entry of judgment, the Michigan Court of Appeals held that the "bad faith" standard announced in *Medley*, which was a case of bad faith failure to pay an uncontested claim under M.C.L.A. § 500.2006(4), is not applicable to cases of bad faith failure to settle. *See Commercial Union Insurance Co. v. Liberty Mutual Insurance Co.*, 137 Mich.App. 381, 357 N.W.2d 861, 865–66 (1984). Specifically, the court held that *Medley* is applicable only to cases under M.C.L.A. § 500.2006(4) and that, contrary to the implication in *Medley*, "'bad faith' pursuant to *Wakefield* is something less than fraud." *Commercial Union v. Liberty Mutual*, 357 N.W.2d at 866. The court concluded that, "The language defining 'bad faith' in *Wakefield* is sufficient." *Id.; see also Murphy v. Cincinnati Insurance Co.*, 772 F.2d 273, 276 n. 1 (6th Cir.1985).

A change in the applicable state law does not necessarily require a remand for reconsideration of the case in light of the new standards. Here the district court's conclusion could be upheld under both the old and new standards. Indeed, the district court concluded:

> Liberty Mutual did not act in bad faith in failing to settle the claim against its insured, UPS. Liberty Mutual clearly made a mistake in judgment, and it probably acted negligently. Neither mistake nor negligence, however, establish bad

faith under the law of Michigan, so plaintiff's claim must fail.

Were this the only language reflecting the court's application of the law to the facts, we would be inclined to conclude that, despite the court's explicit reliance on *Awrey* and *Medley*, the court's analysis was proper under *Wakefield*. Unfortunately, the court also stated:

> Applying the standards of *Wakefield*, *Medley*, and *Awrey* to the facts of the present case, the court cannot conclude that plaintiff American Home has met its burden of showing that Liberty Mutual engaged in the "conscious doing of wrong because of dishonest purpose or moral obliquity."

(citing *Awrey*, 728 F.2d at 355 (quoting *Medley*, 337 N.W.2d at 913)). The language from *Awrey* and *Medley* relied upon by the district court is the precise language subsequently disapproved of by the court in *Commercial Union v. Liberty Mutual.* Permission for leave to appeal has been granted in *Liberty Mutual* and we believe the appropriate course is to remand this case for reconsideration by the district court in light of the principles that we expect the Michigan Supreme Court to announce.

■ Finally, American argues that application of M.C.L.A. § 600.6013 requires that Liberty pay the prejudgment and post-judgment interest owed by American on the judgment. The district court held that American was not entitled to interest because judgment was not entered on the jury's verdict and because the settlement agreement made no provision for the payment of interest. The settlement agreement, at paragraph 24, specifically states that

> The parties to this agreement acknowledge that *all payments* to be made under paragraphs 3 through 15 hereof are made in settlement of a claim, *and represent damages,* for wrongful death.

(emphasis added). The absence of language stating that any part of the payments represents interest adequately distinguishes this case from *Celina Mutual*

*Insurance Co. v. Citizens Insurance Co.,* 133 Mich.App. 655, 349 N.W.2d 547 (1984). The district court did not err in rejecting the claim for interest.

The judgment of the district court is affirmed in part, reversed in part, and remanded for further consideration consistent with this opinion.